### Ryan v. Commissioners of Water District No. 1 of Kenton County, et al.

(Decided June 24, 1927.)

Appeal from Kenton Circuit Court
(Common Law and Equity Division).

1.  Waters and Water Courses.—State may authorize creation of water districts to promote and preserve health, welfare, and convenience of residents of water district, as provided in Acts 1926, c. 139.

2.  Constitutional Law.—Notice by publication of filing of petition of hearing on assessment roll and of final hearing before county court upon final report in proceedings for organization of water district, as provided by Acts 1926, c. 139, held sufficient notice to landowner to justify assessment for public purposes on his property, and not violative of due process amendment of United States Constitution.

3.  Waters and Water Courses.—Landowners of district having notice by publication of proceedings for establishment of water district,

as provided by Acts 1926, c. 139, but failing to appear in county court and object to any of the proceedings or to prosecute appeal from county court, waived right to question validity of assessments.

4. Waters and Water Courses.—Legislature may, as provided in Acts 1926, c. 139, section 11, providing for organization of water district, authorize issuance of bonds based upon assessment to raise funds to pay balance due for improvement and water system in order to carry out public purpose announced.

5. Appeal and Error.—Where bonds had not been issued by water district, and where neither bondholders nor state were before court, court will not decide whether bonds proposed to be issued are exempt from state taxation, since court will not pass upon question affecting rights of persons not before court and not parties to litigation.

STANLEY CHRISMAN for appellant.

RODNEY G. BRYSON and A. E. STRICKLETT for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

This is an equitable action to test the validity of the organization of water district No. 1 in Kenton county under the provisions of chapter 139, p. 666, Acts of 1926.

The plaintiff is a resident and property owner in the water district, while the defendants are the commissioners appointed by the county court as authorized by the act, the Dixie Highway Water Company, and the city of Covington.

The petition alleges that the district has been legally organized, as provided by chapter 139, and that the several commissioners who were appointed as such, have qualified, given bond, and are now acting in that capacity. So at the outset we are relieved from the necessity of considering any questions affecting the regularity of the proceedings under which the district was organized, or the authority of the court to appoint the commissioners, or the fact that they are such. commissioners and are acting as such.

It is alleged that defendant Dixie Highway Water Company is a Kentucky corporation, and at present engaged in furnishing water to the residents of the water district, and that the commissioners so appointed have entered into a contract with the Dixie Highway Water Company to purchase its franchises and properties at an estimated cost of $275,000, and that in order to pay

for same the commissioners with the sanction and approval of the county have levied assessments according to benefits against the property of the plaintiff and other landowners in the district to pay for same; that the assessments so levied are upon the ten year plan, if not paid in cash within 30 days after the assessment; and that in anticipation of the annual installments so levied upon that plan, the commissioners are purposing to issue bonds at the expiration of the 30 days to pay the balance due on the purchase price of the properties and franchises of the Dixie Highway Water Company. There is no complaint of the assessments levied against the plaintiff's property if the commissioners had the right under the law to do so, but it is alleged by way of conclusion not only that the assessments were made without authority of law, but it is further alleged with reference to other proceedings had and taken by the commissioners that they had no right or authority to purchase the franchises and properties of the Dixie Highway Water Company; that the classification of the lands in the district with reference to the benefits to be received is not reasonable, equitable or just, and not in accordance with the requirements of the act; that all actions of the commissioners in levying assessments, or attempting to issue the proposed bonds, are in violation of law, and that all of said acts of the commissioners are illegal and void, and in violation of the laws and Constitution of Kentucky, and in violation of the Fourteenth Amendment to the Constitution of the United States in that they do not provide for due process of law for the taking of the property of the residents thereof.

These allegations in so far as they stand by themselves are all pure conclusions, no specific reason being pointed out or facts set forth why they are contrary to law, except the single one hereinafter referred to, and which is obviously, judging from the allegations of the petition and the brief for appellant, the chief reliance of the plaintiff.

That is that the act in providing for notice of the filing of the petition for the creating by the county court of the water district, the notice of the time of hearing on the assessment roll provided for by the act, and the notice of the time of hearing upon the final report before the county court, were each and all provided for by pub-

lication only, and that neither the plaintiff nor any other landowner of the district had notice other than that by publication as required by the act, and that such notice is not due process of law.

The act at the very outset declares its purpose to authorize the creation of such water districts to be "for the purposes of preserving and promoting the public health, convenience and welfare, and to provide fire protection to the citizens of any county in the state." That such public purposes, involving the health, convenience, and welfare of the public, unquestionably come within the range of legitimate legislative power, and may properly call into exercise the right of eminent domain and the taxing power of the state, has been expressly held in this state with reference to the creation of drainage districts and similar administrative agencies. Duke v. O'Bryan, 100 Ky. 710, 39 S. W. 444, 824, 19 Ky. Law Rep. 81; Scuffletown Fence Co. v. McAllister, 12 Bush 315. And those earlier cases with reference particularly to drainage districts have since several times been followed. If, therefore, as recited in the act, and which is manifestly true under all modern conditions, the health, welfare, and convenience of the residents of a water district are to be promoted and conserved, under the principles enunciated in the drainage cases the power of the state to authorize the creation of such districts cannot be doubted.

Cooley in his Constitutional Limitations (4441) defines due process of law to mean:

> "Such an exercise of the powers of a government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs."

And this court in the case of Reed v. Commonwealth, 138 Ky. 568, 128 S. W. 874, quoted and approved that definition.

The opinion in City of Louisville v. Cochran, 82 Ky. 15, clearly points out the difference between the application of the due process law rule as between two citizens when their property rights are involved and as between the government and the citizen when public duties are involved. It is pointed out that as between two citizens the law of the land throws its inviolable protection

around the property of the citizen through constitutional preservation of due process of law, thereby meaning that he shall be brought into court by notice or warning and given an opportunity to make known or assert his rights, or maintain his lawful defense, and have judgment pronounced after a fair and open trial according to the principles of law. But as to due process of law as between the government and the citizen, when the government in the exercise of its duty to the public levies a tax or assessment against his property, or authorizes the same to be done, it is said:

> "A different rule, based upon state necessity and immemorial usage, is applicable. The laws for the levy, assessment, and collection of taxes may be summary in their nature, and dispense with the careful and methodical steps of the common law in giving personal notice, making up issues by regular pleadings, having a trial by jury, judgment, and execution. (McCarroll's Lessee v. Weaks) 2 Overt. (Tenn.) 215. The collection of taxes under such summary laws is generally and properly confided to ministerial officers. And, when the power of levy and assessment is delegated, notice is usually required as to the former, and must be given, and an opportunity to be heard allowed as to the latter."

Then in the case of Trustees v. Brooks, 163 Ky. 200, 173 S. W. 305, involving the validity of an act authorizing the annexation of additional territory to school districts, this court reaffirmed the same doctrine above quoted from the Cochran case, and quoted from Mr. Cooley as follows:

> "But when property is appropriated by the government to public uses, or the Legislature interferes to give direction to its title through remedial statutes, different considerations from those which regard the controversies between man and man must prevail, different proceedings are required, and we have only to see whether the interference can be justified by the established rules applicable to the special case."

In the instant case the act authorizing the creation of the district provided for notice by publication of the filing of the petition; it provided for such notice of the hearing on the assessment roll, and for such notice of the final hearing before the county court upon the final report

provided for in the act.    Taylor on Due Process of Law, p. 364, section 159.

. The exhibits on file with the petition, and which are made a part of it, disclose that all of these notices were given in accordance with the provisions of the act; and, although no personal notice was given to appellant, or any other landowner, it is obvious that the rule of law above stated, and well recognized in this state, was such notice to the citizen as will justify the assessment for public purposes upon his property.

Although each and every one of these publications of notice required by the act were given, neither appellant nor any other landowner of the district appeared in the county court, or made defense, or filed exception, or took any step manifesting objection to any of the proceedings had in that court.    They had notice of the creation of the district for a public purpose, and when having such notice they failed to take any steps calling in question the regularity of the proceedings, or to prosecute an appeal from the county court, they have waived their right now to call in question the validity of the assessments.

The authority of the commissioners under section 6 of the act to purchase the properties and franchises of the existing water company, then furnishing water to the citizens of the district, is explicitly granted after an examination by the commissioners of the properties and after ascertaining that the existing water plant is properly designed and constructed; and they are authorized by that section not only to purchase the same, but to pay for it by assessment according to benefits as provided for the original construction and improvement.

Likewise express authority is given in section 11 of the act to the commissioners at the end of 30 days after the making of assessments to issue bonds to pay any balance due; and we see no valid objection to the legislative power to authorize the issuance of such bonds based upon such assessment to raise funds for the carrying out of the public purpose announced.

There are filed with the plaintiff's petition exhibits showing all the steps taken from the inception of the proceeding in the county court down to the filing of this action, and our examination of them discloses no valid reason either to adjudge the proceeding invalid in any respect, or to criticize anything done in the course of the proceeding.    The plaintiff and other landowners, as we have seen, have waived their rights to call in question the

propriety of any of the proceedings taken, and we have no doubt of the legislative power to authorize the creation of this administrative body for the purposes recited, and have no doubt on the question of due process of law as set forth.

The question whether the bonds proposed to be issued are exempt from state taxation is not presented for decision. The bonds have not been issued, there is no bondholder before the court, nor is the state of Kentucky, and consequently we must decline to pass upon a question affecting the rights of persons not before the court and not parties to the litigation.

However, although the lower court in its judgment decided that such bonds when issued were exempt from state taxation, we do not deem it necessary for that reason alone to reverse the judgment, but it is directed that upon the filing of the mandate of this court the lower court will modify its judgment to that extent.

When the judgment is so modified, it is affirmed.