## Middendorf et al. v. Jameson et al.

(Decided June 23, 1936.)

112

BLAKELY & MURPHY for appellants.
JOHN H. KLETTE for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Water district No. 1 of Kenton county was organized under an act of the General Assembly, approved March 27, 1926, chapter 139, p. 666, sec. 1 (section 938g-1, Kentucky Statutes). Its organization was sustained in Ryan v. Commissioners of Water District No. 1 of Kenton County et al., 220 Ky. 822, 295 S. W. 1023, 1025.

In the Ryan Case we said:

"The authority of the commissioners under section 6 of the act to purchase the properties and franchises of the existing water company, then furnishing water to the citizens of the district, is explicitly granted after an examination by the commissioners of the properties and after ascertaining that the existing water plant is properly designed and constructed; and they are authorized by that section not only to purchase the same, but to pay for it by assessment according to benefits as provided for the original construction and improvement.

"Likewise express authority is given in section 11 of the act to the commissioners at the end of 30 days after the making of assessments to issue bonds to pay any balance due; and we see no valid

objection to the legislative power to authorize the issuance of such bonds based upon such assessment to raise funds for the carrying out of the public purpose announced.''

In accordance with this construction of section 11, now section 938g-11, Kentucky Statutes, the commissioners of water district No. 1 of Kenton county, on the 23d day of June, 1927, issued and sold assessment bonds in the sum of $288,045.29.

They were payable solely out of the assessments against the property embraced in the water district, to be collected by the board of commissioners without expense to the holder. The board of commissioners obligated itself to levy additional assessments in case of failure to collect any assessment at that time levied, so that the bond and interest shall be payable punctually as they become due.

Section 938g-1 provides that the court may by its order strike off any part of the territory, which the testimony shows will not be benefited by the creation of such district.

On February 21, 1930, in accordance to this provision of the statute, a part of the original territory assessed was stricken from the district, on the court's finding that the property stricken would not be benefited by the assessment. The total assessment levied against the territory so stricken amounted to $40,878.51. This released the stricken property from the order of assessment. Because of this ruling of the court and the general depression that has so universally prevailed since 1930, the owners of the property in the district have been unable to pay their assessments and the commissioners have not been able to collect them. The delinquencies in the principal and interest of the bonds arising therefrom aggregate $51,173.49, leaving outstanding and unpaid bonds in the sum of $115,000.

This action was instituted under section 639a-1 et seq., Civil Code of Practice, for a declaration of the right of the board of commissioners to issue and sell refunding bonds in accordance with an act of the General Assembly of 1936, c. 110, p. 340, approved February 18, 1936, providing that ''Water Districts in coun-

ties of this State which have been organized and operating under and in pursuance to an Act of the General Assembly of the Commonwealth of Kentucky, approved March swenty-seven (27), one thousand nine hundred twenty-six (1926), and the amendments thereto," etc. (section 1), may issue refunding bonds. The court decided it was clothed thereby with the power to issue and sell same for the purpose of paying the original bonds.

It will be observed that water district No. 1 of Kenton county was organized under an act approved March 27, 1926.

Section 1 of the Act of 1936 expressly authorizes and empowers such water district "to issue refunding bonds for the purpose of refunding any bonded debt, including assessment bonds which have heretofore been issued under the said act," when a default in the payment of principal and interest have occurred.

Section 2 of the act provides by whom the bonds shall be signed and countersigned and serially numbered and in such form, and to run for such time or times not exceeding thirty years, and to mature and be redeemable as the board of commissioners of the water district shall prescribe by an ordinance or resolution. It also provides that the rate of interest shall not. exceed 6 per cent. to be evidenced by interest coupons attached, and not to be sold for less than par and accrued interest, and that their proceeds shall be used exclusively for the refunding of such bonded debts as defined in the act and for no other purpose whatsoever.

Section 3 imposes upon the district the duty to collect the assessments and revenues of the district and carry the same in the sinking fund, and whenever there is a sufficient sum in it over and above the amount required for the payment of interest on the bonds, it shall be used in the purchasing of so many of the bonds as practical.

An act of the General Assembly of 1934, c. 145, p. 580, sec. 1 (section 3952-1, Kentucky Statutes Supp. 1934), conferred the jurisdiction on the Public Service Commission of Kentucky on utilities "distributing or furnishing water to or for the public for compensation," which, of course, included water district No. 1

of Kenton county. The act of 1936, c. 92, p. 299, approved February 21, 1936, exempted from the provisions of the act of 1934, supra, "any city or town or water districts established in pursuance of Chapter one hundred thirty-nine (139), Acts one thousand nine hundred twenty-six (1926), and amendments thereto, owning, controlling, operating or managing any facility or facilities enumerated" in this section (section 3952-1, Kentucky Statutes Supp. 1934).

The question arises and must be determined whether water district No. 1 of Kenton county may be so legislatively distinguished and classified, it having been organized under an act of 1926, now section 938g-1, Kentucky Statutes.

"The power of classification for legislative purposes rests with the Legislature, subject to the constitutional limitation or restriction that it must rest on some natural and reasonable difference which appears reasonable and just in relation to the act in respect to which the classification is proposed. The Constitution permits the Legislature to indulge in making classifications of subjects of legislation for the purpose of making different classes for the meeting of different contingencies naturally requiring different legislation in order that the Legislature may adopt general legislation to meet the needs of the people, to promote some public object, or the welfare or interest of the general public. Smith et al. v. Board of Trustees, 171 Ky. 39, 186 S. W. 927; Jones v. Russell, 224 Ky. 390, 6 S. W. (2d) 460. Such classification will not be disturbed by the court unless so manifestly unfounded, arbitrary, or unjust as to impose a burden upon, or exclude, one or more of a class, without reasonable basis in fact. City of Louisville v. Coulter, 177 Ky. 242, 197 S. W. 819, L. R. A. 1918 A, 811; Mansbach Scrap Iron Co. v. City of Ashland, 235 Ky. 265, 30 S. W. (2d) 968; Jones v. Russell, supra." Shaw v. Fox, 246 Ky. 342, 55 S. W. (2d) 11, 14.

It is easy to be seen that water district No. 1 of Kenton county, created and existing under the act of 1926, in virtue of assessments on the property contained in the district for the payment of the purchase

price thereof, and its maintenance, is distinguishable from the other utilities embraced in section 938g-1, and the Legislature was well within its right in exempting from the jurisdiction of the Public Service Commission of Kentucky water districts of the type here under review. Commonwealth of Kentucky v. Kentucky Jockey Club, 238 Ky. 739, 38 S. W. (2d) 987; Ravitz v. Steurele, 257 Ky. 108, 77 S. W. (2d) 360; Linton v. Fulton Bldg. & Loan Ass'n, 262 Ky. 198, 90 S. W. (2d) 22; Shaw v. Fox, supra.

In State Highway Commission of Kentucky v. King, 259 Ky. 414, 82 S. W. (2d) 443, 446, it was held that bridge revenue bonds payable out of funds derived from toll bridges could be refunded. In that case, we said:

"The implied power to refund outstanding bonds at a lower interest rate and thus, in effect, to reduce the indebtedness is a necessary incident of the powers expressly conferred in view of the purpose of the toll bridge acts."

In Cook v. City of Louisville, 260 Ky. 474, 86 S. W. (2d) 157, the same principle is stated.

The refunding bonds proposed to be issued by water district No. 1 of Kenton county will be payable solely out of the revenue raised by the assessments of the property in the district, and are not within the inhibition of sections 157 and 158 of the Constitution. Francis v. City of Bowling Green, 259 Ky. 525, 82 S. W. (2d) 804; Kentucky Utilities Co. v. City of Paris, 248 Ky. 252, 58 S. W. (2d) 361; Wheeler v. Board of Com'rs, 245 Ky. 388, 53 S. W. (2d) 740; Williams v. City of Raceland, 245 Ky. 212, 53 S. W. (2d) 370.

The principles stated in those cases, without the authority conferred by the act of 1936, permit the commissioners of water district No. 1 of Kenton county to issue and sell refunding bonds with which to satisfy the original ones. With it, the authority of the board of commissioners to issue and sell them is assured and certain.

The declaration of the rights of the water district are accurately stated in the trial court's judgment. It is in harmony with our views as herein expressed. Therefore, it is affirmed.