## Ebert v. Board of Education of School Dist. of City of Newport et al.

March 24, 1939.

A. M. Caldwell, Judge.

634

CARL H. EBERT for appellant.

LORIMER W. SCOTT for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

The appellee, the Board of Education of the School District of the City of Newport, on November 25, 1938, entered into an agreement to sell to Magnus and Company of Cincinnati $90,000 in 3¼ per cent. funding bonds of the Newport City School District, and on December 14, 1938, an order was adopted by appellee authorizing the issuance of these bonds for the purpose of paying $90,000 floating indebtedness.

Appellant filed this action alleging that appellee was about to issue the bonds illegally and sought an injunction to prevent the issuance thereof. The appellee

answered, setting out in detail the manner in which the floating indebtedness was created and proof was taken attempting to establish these allegations and show that the floating indebtedness was created by a failure of reasonably anticipated revenue to measure up to expectations. On final hearing, the trial court adjudged that the floating indebtedness was a valid subsisting obligation and that appellee was justified in issuing the proposed bonds to fund this indebtedness. Appellant's petition was accordingly dismissed and from the judgment dismissing his petition he prosecutes this appeal.

Two considerations are presented, the first being whether or not the agreement with Magnus and Company is rendered void by failure to advertise the bonds for competitive bidding, and, secondly, whether or not the proof is sufficient to establish a valid floating indebtedness justifying the bond issue.

(1) In Eagle v. City of Corbin, 275 Ky. 808, 122 S. W. (2d) 798, it was held that a municipality has no power to contract to sell bonds before they come into existence or before they are authorized, and that failure to afford an opportunity to other than one purchaser to bid on the proposed bonds and the making of a private sale before bond issue had been authorized could not be upheld. In view of the tacit or implied construction heretofore given to the law on this subject, a saving clause was inserted in that opinion holding that contracts theretofore entered into with reference to the sale of such bonds were not affected by the decision and that it was only applicable to projects thereafter initiated. As the contract for the sale of the bonds in question had been entered into prior to December 22, 1938, the effective date of that decision, we are of the opinion that the contract is not voided by that decision, but that the contract of sale is valid if it shall be finally determined that the bonds are properly issuable.

(2) Sections 186c-6 and 186c-7, Kentucky Statutes, provide that it shall be unlawful for any taxing district to make a sale of any bond issue until the issuance thereof has been approved by a court of competent jurisdiction, and that where it is proposed to issue bonds to fund a floating indebtedness, such floating indebtedness must be satisfactorily established by competent proof and it must appear that there has been no failure on the part of the officials of the taxing district to have

due regard for the finances of the district during the time in which said indebtedness was created. By virtue of these statutory provisions, there is placed on this court the duty of seeing that in all cases of proposed bond issues proof shall be made establishing that the floating indebtedness sought to be funded is a valid and legal obligation of the taxing district and that the officials of the district have had due regard for its finances, and the burden of proof is on the taxing district.

In the case at bar the only evidence offered is that of Emil Gearhart, business manager of the Board of Education, who testifies as to the manner in which this floating indebtedness was accumulated, and no record of any kind with reference thereto is filed as an exhibit with the petition or his evidence.

By section 4399-40, Kentucky Statutes, each board of education is required to prepare a school budget showing the amount of money needed for current expenses, debt service, capital outlay and other necessary expenses of the schools during the succeeding fiscal year, and showing the amount needed to be raised by local taxation, incuding the rate of levy necessary to raise such amount. This budget is required to be filed with the State Board of Education for approval. It is also the duty of the board of education to prepare and submit to the State Board of Education, not later than 15 days after the state per capita has been officially declared, a close estimate or working budget consistent in its major divisions with the general budget previously prepared. The board is also required to expend the money received by it in accordance with this budget.

By the provisions of section 4384-30, it is the duty of the superintendent of public instruction to see that all financial and educational accounts are accurately kept and that reports are made according to the forms adopted by the State Board of Education. Pursuant to authority thereby granted to the State Board of Education, it has prepared a form and requires reports thereon from each board of education showing a complete account of financial expenditures made during the previous fiscal year.

It is only by an examination of these reports and records that a complete and accurate picture of the financial transactions of a board of education may be presented to this court in such form that we may fairly

discharge the duty placed on us of ascertaining whether or not a floating indebtedness is of the type which may be funded by the issuance of bonds. An examination of such records by us is also necessary in order that we may determine whether the officials of the taxing district have had due regard for its finances and whether the money collected has been expended by the board of education in accordance with the budget. By section 186c-7, we are prohibited from approving a bond issue if it should appear that the officials have not had due regard for its finances.

In Lee v. Board of Education of Bell County, 261 Ky. 379, 87 S. W. (2d) 961, it was held that a board of education which can mandatorily require the fiscal court to make a school levy is a taxing district within the constitutional provision (Constitution, section 158) allowing issuance of bonds to fund floating indebtedness of "city, town, county, taxing district or other municipality," but in that case, as well as in other cases where the issuance of such bonds was approved, the allegations and proof were specific and definite, showing the exact manner in which the deficits occurred creating the floating indebtedness and the budgets prepared by the board of education were shown in the record.

In Brown v. Hopkins County Board of Education, 274 Ky. 298, 118 S. W. (2d) 703, it was held that a board of education which kept its expenditures within the amounts fixed by its budget was authorized to fund a valid floating indebtedness created by reason of unexpected failure in its revenue, but, as pointed out in the opinion, the record showed conclusively that the debt sought to be funded was a valid obligation of the board. It was also established definitely that the expenditures were kept within the amounts fixed by its budget. In this case, while copies of the budgets were not actually filed with the record, most of the items contained in the budgets were read into the record from the budgets themselves. The proof was much more specific and definite than in the case at bar and showed clearly and definitely that expenditures were kept within the budget.

We have reached the conclusion that in all cases where budgets and financial reports are available they are the best evidence of the information therein contained and they should be made a part of the record in order for the courts to have a clear and definite idea as

to whether or not the officials have had due regard for the finances of the taxing district.

We have taken the liberty of examining some of the budgets filed by the appellee board of education with the State Board of Education and find that there seems to be a material difference in some instances between the figures contained in those budgets and those appearing in the record in this case by the testimony of Mr. Gearhart. We do not mean to say that his testimony is incorrect—possibly we misunderstand it—but this situation only serves to confirm us in our opinion that the evidence is not sufficiently definite for us to determine the exact manner in which the indebtedness sought to be funded by the bond issue in controversy was created.

Ordinarily, in an equity case where the judgment is reversed, this court directs the judgment to be entered, and in Hancock v. Henderson County Board of Education, 272 Ky. 427, 114 S. W. (2d) 523, and Williams' et al. v. Board of Education of Paintsville et al., 274 Ky. 624, 119 S. W. (2d) 642, it was held that in the future, as to all cases of this character, full and complete preparation of the case should be made before submission and on reversal the entry of judgment would be directed. However, in the present case, as we are laying down a rule requiring a somewhat stricter degree of proof than that heretofore required, and as the proof introduced in the case was, within a fair degree of approximation, in accord with the amount of proof heretofore required in some cases, we will not direct the entry of a judgment, but remand the case and give further opportunity for the taking of additional proof.

The judgment is therefore reversed for further proceedings in conformity with this opinion.